AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the

District of New Mexico

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH:<br>Facebook Account Username, "DimpsLoka"<br>THAT IS STORED AT PREMISES<br>CONTROLLED BY Meta Platforms, Inc. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>Case No. **23 MR 1561** |

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A, attached hereto and incorporated herein.

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B, attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 401(3) | Power of Court: Disobedience or resistance to its lawful writ, process, rule, decree, or command |
| 21 U.S.C. § 841(a)(1) | Intent to knowingly manufacture, or possession with intent to manufacture, a controlled substance |

The application is based on these facts:

See attached Affidavit in Support of an Application for a Search Warrant, attached hereto and incorporated herein.

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Erin K. Newsom, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
submitted electronically and sworn telephonically    *(specify reliable electronic means).*

Date: August 15, 2023

City and state: Albuquerque, New Mexico

_____
*Judge's signature*

Jennifer M. Rozzoni, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH: FACEBOOK ACCOUNT USERNAME: "DIMPSLOKA", THAT IS STORED AT PREMISES CONTROLLED BY Meta Platforms, Inc. | Case No.<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Erin K. Newsom, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises controlled by Meta Platforms, Inc., an email provider headquartered at 1601 Willow Road, Menlo Park, CA 94025.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta Platforms, Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since December of 2022.  As such, I am a federal law enforcement officer within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.  I am currently assigned to the Joint Terrorism Task Force (JTTF) at the Albuquerque Field Office of the FBI. I primarily investigate the threat of terrorism, racially motivated threats of violence, threats of violence to the Government, Government Officials, abortion related violent

extremism, and conspiracies associated with these offenses. My investigative experience includes, but is not limited to, the FBI Training Academy at Quantico, Virginia; interviewing subjects, targets and witnesses for violent gang cases; writing affidavits for and executing search and arrest warrants for drug trafficking cases; managing cooperating sources; collecting evidence; conducting surveillance; and analyzing public records. I have received on-the-job training and instruction from state, local, and federal agencies in the investigations of federal offenses, to include the recruitment and management of confidential sources, unlawful firearm possession, narcotics trafficking, surveillance (both physical and technical), analyzing phone records, drafting and serving arrest and search warrants, and issuing subpoenas. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. § 401(3) and 21 U.S.C. § 841(a)(1), and I am authorized by the Attorney General to request a search warrant.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and law enforcement partners. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of 18 U.S.C. § 401(3), Power of Court: Disobedience or resistance to its lawful writ, process, rule, decree, or command; and 21 U.S.C. § 841(a)(1), intent to knowingly manufacture, or possession with intent to manufacture, a controlled substance exists in the Facebook account related to Judy CASTILLO, specifically DimpsLoka (hereinafter, the "SUBJECT ACCOUNT"). Investigators believe the SUBJECT ACCOUNT to be used by CASTILLO. The SUBJECT ACCOUNT was observed by the United States Probation Office (USPO) in screenshots of CASTILLO's cell phone. There is also probable cause to search for the information described in Attachment A for evidence of these crimes further described in Attachment B.

2

JURISDICTION

4.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

BACKGROUND

5.      Based on my review of federal and state court documents and law enforcement databases, I understand CASTILLO to be a felon with a conviction for the offense of 18 U.S.C 922(g)(3): Prohibited Person in Possession of a Firearm and Ammunition. I am also aware CASTILLO has a criminal history with arrests for the following: Possession of a controlled substance in 2008 (D-202-CR-2008-00716); Conspiracy to commit receiving/transferring stolen motor vehicle in 2008 (D-202-CR-2007-04154); Auto burglary in 2008 (D-202-CR-2008-01440); and Residential Burglary in 2009 (D-202-CR-2009-05476).

6.      I am also aware CASTILLO was subject to conditions of supervised release, as ordered by Judge Kea W. Riggs, set for the period of March 29, 2023 to September 28, 2023, for the offense of 18 U.S.C 922(g)(3): Prohibited Person in Possession of a Firearm and Ammunition (Case Number: 1:22CR00878-001KWR). CASTILLO's conditions of supervised release prohibited her from communicating or interacting with someone known to engage in criminal activity or knowingly communicating or interacting with someone convicted of a felony, without first getting permission from the probation officer. In addition, they prohibit the unlawful possession and/or use of a controlled substance. On April 21, 2023, the USPO sought approval for an Emergency Warrant (Case Number: 22-CR-00878-001 KWR) to revoke the supervised release for CASTILLO due to CASTILLO's alleged violations of the conditions of her supervised released. CASTILLO absconded and was a fugitive until

June 10, 2023 when the Bernalillo County Sheriff's Office (BCSO) acted on her arrest warrant (BCSO case number: S023060007739-001).

PROBABLE CAUSE

*Contact with Felons*

7.      The United Stated Probation Office (USPO) of Albuquerque, New Mexico reported that on or about April 11, 2023, CASTILLO was moved from Hoffman Hall sober living center to a residential reentry center (RRC), Diersen Charities Halfway House, located at 2331 Menaul Blvd., Albuquerque, New Mexico. CASTILLO was moved to this residence for closer monitoring after the allegation by Hoffman Hall that CASTILLO sold fentanyl at the sober living center.

8.      The USPO reviewed and obtained screen shots of the SUBJECT ACCOUNT on CASTILLO's cellphone per the rules and regulations at the RRC.  The search of CASTILLO's phone was completed on April 18, 2023 by the USPO and all screenshots referenced of the SUBJECT ACCOUNT were on or before that date. Investigators queried open-source and law enforcement data bases to research the names identified from the SUBJECT ACCOUNT screen shots to confirm communications between CASTILLO and at least three known convicted felons: MONICA MORA, convicted for the 4th degree felony violation of New Mexico statutes 30-16D-4(A) & 30-16D-4, receiving or transferring stolen motor vehicles, in case number D-2-2-CR-2018-02571; DESIREE VALTIERRA, convicted for violation of U.S.C 1951(a) and 2, aiding and abetting the interference with interstate commerce by robbery, in case number 1:21-cr-00250-MV; and DEBORAH SALGADO, convicted for the 3rd degree felony violation of New Mexico statute 30-7-16(A)(1) & (B), receipt, transportation or possession of a firearm or destructive device by certain persons (Felon), in case number D-202-CR-2022-00266.

*Allegations of Drug Trafficking*

9.     Further review of the screen shots of the SUBJECT ACCOUNT by the FBI indicated

evidence of communication related to drug trafficking by CASTILLO.  On or around March 30, 2023, the

SUBJECT ACCOUNT engaged in communication with a Nancy HOLGUIN discussing drug related

activity. In the screenshot images below, the SUBJECT ACCOUNT messages are the black outline and

HOLGUIN's messages are the white outline.  The SUBJECT ACCOUNT used the term "Fruit" which

from my training I believe to be a slang term for illicit drugs. Also, the SUBJECT ACCOUNT and

HOLGUIN discuss scales and weights of the items to be sold, which from my training and experience I

know drug dealers to utilize scales for drug trafficking.  Images of the screen shots are below:


Nada chilling hey worm said if give shadow same shit for wat I got from u

MAR 30 AT 3:59 PM

I guess he just wants give him 7 stamps that's it so tell him he can just pay me for what I gave u lol and I still fill the suit case for shadow and him but can you weigh that and how much fruits did I give you so I now what to change his tight ass lol

And how's work

I think I got to go beat up someone real quick but I'm tring to go pick up a whip and toy do u know Johanna chavez

Hey so my man says that he gave him that because he had a bill with him so he cleared his bill n got then on top of it


Work all right

MAR 30 AT 9:59 PM



10.     On or around April 8, 2023, the SUBJECT ACCOUNT engaged in communication with VALTIERRA discussing drug related activity at the sober living center CASTILLO resided at. In the screenshot images below, the SUBJECT ACCOUNT messages are the black outline and VALTIERRA's messages are the white outline.   In the below message exchange, the SUBJECT ACCOUNT mentioned to VALTIERRA being upset with "Nancy" for reporting her to the halfway house for selling fentanyl. From a review of the message exchanges, "Nancy" is the same person as Nancy HOLGUIN, party in the above message exchange with the SUBJECT ACCOUNT. The SUBJECT ACCOUNT further discussed

below with VALTIERRA that HOLGUIN sold "fake paper" to the SUBJECT ACCOUNT. In my training

I believe "fake paper" to be a slang term for suboxone or suboxone strips.  An image of the screen shot is

below:



11.     On April 21, 2023 the USPO found CASTILLO to be in violation of her supervised release

for having continuous contact with several felons or individuals engaged in criminal activity, evidenced

by the screen shots from the SUBJECT ACCOUNT taken on CASTILLO's cell phone and confirmed by

open-source records checks of the USPO.

*CASTILLO's Positive Drug Test*

12.     In addition, CASTILLO tested positive in a routine drug test administered by the USPO

for methamphetamine on April 19, 2023. CASTILLO's supervised release conditions prohibit the

unlawful possession and/or use of a controlled substance. An emergency warrant was issued for CASTILLO's arrest for violating the terms of her supervised release.

*CASTILLO's Arrest/Possession of Heroin*

13.     CASTILLO absconded from the Diersen Charities Halfway House before she could be arrested on the supervised release violation warrant. CASTILLO was later arrested by the Bernalillo County Sheriff's Office on June 10, 2023 for her active federal arrest warrant, at 1502 Barcelona Road SW, Albuquerque, New Mexico. At the time of her arrest, the BCSO Deputy found CASTILLO to be in possession of what he believed, based on his training and experience, to be suspected heroin and 12 individual packs of suspected suboxone strips. The BCSO Deputy completed a field test of the suspected heroin which came back presumptive positive for heroin. The total weight of the heroin was 13.1 grams. The amount of heroin found on CASTILLO I believe to be greater than a user quantity amount. Combined with the messaging found in the SUBJECT ACCOUNT that discussed drug trafficking activities, I believe the heroin found on CASTILLO to be indicative to drug trafficking.

## BACKGROUND CONCERNING FACEBOOK

14.     Meta Platforms, Inc. owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

15.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

16.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

17.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

18.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a

9

space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

19.    Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

20.    Facebook users can exchange private messages on Facebook with other users.  Those messages are stored by Facebook unless deleted by the user.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger.  These chat communications are stored in the chat history for the account.  Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

21.    If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

22.    Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

23.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

24.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

25.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

26.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

27.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

28.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any

11

credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

29.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook

account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

30.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

31.     This application seeks a warrant to search all responsive records and information under the control of Meta Platforms, Inc., a provider subject to the jurisdiction of this court, regardless of where Meta Platforms, Inc. has chosen to store such information. The government requests the disclosure, pursuant to this warrant, of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers of such communication, record, or other information that is within Meta Platforms, Inc.'s possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

32.     It is possible that Meta Platforms, Inc. stores some portion of the information sought outside of the United States. According to 18 U.S.C. § 2713 (Required preservation and disclosure of communications and records), Meta Platforms, Inc. shall preserve, backup, or disclose the contents of a wire or electronic communication and any record or other information pertaining to a customer or subscriber within such provider's possession, custody, or control, regardless of whether such communication, record, or other information is located within or outside of the United States.

33.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta Platforms, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.

34.     Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

14

<u>CONCLUSION</u>

35.     Based on the forgoing, I believe there is evidence, fruits, and instrumentalities related to the SUBJECT ACCOUNT and respectfully submit there is probable cause to search for evidence within the account. I respectfully request that the Court issue the proposed search warrant. Because the warrant will be served on Meta Platforms, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**This affidavit reviewed by AUSA Timothy Trembley.**

Respectfully submitted,

Erin K. Newsom
Special Agent
Federal Bureau of Investigation

Submitted electronically and sworn telephonically to me on August 15, 2023.

Jennifer M. Rozzoni
UNITED STATES MAGISTRATE JUDGE

15

## <u>ATTACHMENT A</u>

### *Property to be searched*

This warrant applies to information associated with the Facebook account username,

"DimpsLoka" (the SUBJECT ACCOUNT) that is stored at premises owned, maintained,

controlled, or operated by Meta Platforms, Inc. a social media provider headquartered at Meta

Platforms, Inc. 1601 Willow Road, Menlo Park, CA 94025.

**ATTACHMENT B**

***Property to be seized***

<u>*I.*</u>      <u>*Information to be disclosed by Meta Platforms, Inc. (the "Provider")*</u>

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc., including any messages, records, files, logs, or information that have been deleted but are still available to Meta Platforms, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta Platforms, Inc., is required to disclose the following information to the government for the user ID listed in Attachment A for the duration between March 29, 2023 to June 10, 2023:

(a)      All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; status updates; videos, photographs, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past

event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)    All past and present lists of friends created by the account;

(g)    All records of Facebook searches performed by the account;

(h)    All information about the user's access and use of Facebook Marketplace;

(i)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(j)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

II.     _Information to be seized by the government_

All information described above in Section I that constitutes fruits, evidence and

instrumentalities of violations of 18 U.S.C. § 401(3), Power of Court: Disobedience or resistance to

its lawful writ, process, rule, decree, or command; and other violations of 21 U.S.C. § 841(a)(1)

(intent to knowingly manufacture, or possession with intent to manufacture, a controlled

substance).and those violations involving those yet unnamed, including, for each user ID

identified on Attachment A, information pertaining to the following matters:

(a)  Relating to violations of 18 U.S.C. § 401(3), Power of Court: Disobedience or

resistance to its lawful writ, process, rule, decree, or command; and other violations of

21 U.S.C. § 841(a)(1) (intent to knowingly manufacture, or possession with intent

to manufacture, a controlled substance).

(b)  Evidence indicating how and when the Facebook account was accessed or used,

to determine the chronological and geographic context of account access, use, and

events relating to the crime under investigation and to the Facebook account

owner;

(c)  Evidence indicating the Facebook account owner's state of mind as it relates to

the crime under investigation;

(d)  The identity of the person(s) who created or used the user ID, including records

that help reveal the whereabouts of such person(s).The identity of the person(s)

who communicated with the user ID about matters relating to violations of 18

U.S.C. § 401(3), Power of Court: Disobedience or resistance to its lawful writ, process,

rule, decree, or command; and other violations of 21 U.S.C. § 841(a)(1) (intent to

knowingly manufacture, or possession with intent to manufacture, a controlled substance).including records that help reveal their whereabouts.